# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD, | CASE NO. 1:11-cv-00101-AWI-SKO PC |
| Plaintiff, | FIRST SCREENING ORDER REQUIRING PLAINTIFF TO EITHER FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS AGAINST DEFENDANTS DEAZEVEDO, PAZ, STEPHENS, AND JAMES |
| v. | |
| D. L. DeAZEVEDO, et al., | |
| Defendants. | |
| | (Doc. 9) |
| _____ / | THIRTY-DAY DEADLINE |

## First Screening Order

### I.   Screening Requirement and Standard

Plaintiff Timothy Howard, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 20, 2011. On August 17, 2011, Plaintiff filed an amended complaint as a matter of right. Fed. R. Civ. P. 15(a).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

1

1  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

2  do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009) (citing Bell

3  Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's

4  allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v.

5  Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

6  omitted).

7      While prisoners proceeding pro se in civil rights actions are still entitled to have their

8  pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is

9  now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive

10 screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to

11 allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged,

12 Iqbal, 556 U.S. at __, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. U.S. Secret Service, 572

13 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

14 sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal,

15 556 U.S. at __, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

16 **II.    Plaintiff's Claims**

17      **A.      Summary of Allegations**

18      Plaintiff, who is currently incarcerated at California Correctional Institution in Tehachapi,

19 brings this action against Correctional Officers D. L. DeAzevedo, P. Paz, B. Stephens, and F.

20 Carreon, Correctional Lieutenant D. James, Correctional Sergeant M. Jones, and Registered Nurse

21 S. Oder for violating his rights in 2010 while he was at California Substance Abuse Treatment

22 Facility and State Prison in Corcoran.  Plaintiff seeks damages and declaratory relief for the violation

23 of his civil rights under the First Amendment, the Eighth Amendment, and the Due Process Clause

24 of the Fourteenth Amendment of the United States Constitution, and under the California Civil

25 Code.

26      On March 8, 2010, Plaintiff and four other inmates held their exercise cages "hostage" by

27 refusing to exit the cages until they could speak with Lieutenant Childs and Sergeant Plunkett about

28 ///

the abuses of prisoners' rights by Defendants DeAzevedo, Paz, and Stephens, and other staff members, which they succeeded in doing.

The next day, when Plaintiff was on the administrative segregation exercise yard, Defendants DeAzevedo, Paz, and Stephens retaliated against him for complaining about them by searching his cell and confiscating his canteen items and legal papers, leaving his cell destroyed in the process. When Plaintiff returned from the exercise yard and saw the condition of his cell, he refused to give up his handcuffs to his escorting officer, Hopkins. Sgt. Plunkett arrived and told Plaintiff he needed the handcuffs and Plaintiff could write an inmate appeal, which Plunkett would place on the desk of Defendant James. Plaintiff complied and thereafter drafted an inmate appeal, which Sgt. Plunkett placed on Defendant James' desk, along with appeals by two other inmates whose cells were also tossed for complaining the previous day. However, Defendant James did nothing about the appeals.

On March 10, 2010, Plaintiff was transported to Kings County Superior Court in Hanford for court proceedings and when he returned, his appeal from the day before was laying on his bed, answered by Defendant DeAzevedo.

On March 17, 2010, Plaintiff was issued a serious rules violation report (RVR) by Defendant DeAzevedo for threatening staff. In the RVR, Defendant DeAzevedo falsely stated that on March 10, 2010, at 11:30 a.m., Plaintiff told DeAzevedo that he was going to get Defendants Paz and Stephens for searching his cell and taking his property. In response to the RVR, Plaintiff submitted an appeal against Defendants DeAzevedo, Paz, and Stephens for issuing a false RVR against him and he stated in the appeal that he had been in Hanford for court on March 10, 2010. The appeal was ripped up by Defendant DeAzevedo.

On April 6, 2010, Defendants DeAzevedo, Paz, and Jones removed the name tag from the back of Plaintiff's wheelchair and moved it to another inmate's wheelchair. When Plaintiff exited his cell the same day, he almost fell to the floor due to the old, busted, hazardous wheelchair Defendants DeAzevedo, Paz, and Jones provided for him. On April 7, 2010, Plaintiff submitted another inmate appeal against Defendants DeAzevedo, Paz, and Jones, complaining they were retaliating against him and about the dangerous wheelchair. Defendant DeAzevedo responded to the

///

3

appeal and denied any retaliation, stating that the ADA nurse, Defendant Oder, told him to issue Plaintiff that wheelchair.

On April 9, 2010, Plaintiff submitted another inmate appeal grieving the same issues but adding to the appeal Defendant Jones, whom he inadvertently failed to include previously, and Defendant Oder.

On April 20, 2010, Plaintiff cuffed up for court, as directed, but when he went to sit in his wheelchair to exit the cell, he tripped over the broken footrest, slipped, and flipped forward over his walker, landing on top of the walker and injuring his groin, head, and left shoulder. As Plaintiff was lying on the floor in severe pain, Defendants DeAzevedo, Paz, Stephens, Jones, James, and Carreon just looked at him and thought it was funny. As other people arrived, Defendant James ordered them to leave, and Defendants DeAzevedo and Paz dragged Plaintiff out of his cell by his legs. Plaintiff requested medical aid, but his request was denied by Defendants DeAzevedo, Paz, Stephens, Jones, James, and Carreon. As Plaintiff repeatedly requested medical attention, he was told to shut up by Defendants Jones and James. At Defendants Jones and James' direction, Plaintiff was picked up, placed in his wheelchair, and wheeled to "receiving and release" by Defendants DeAzevedo, Paz, Stephens, and Carreon.

On April 21, 2010, Plaintiff was seen during "doctors's line" for a different issue by T. Byers, a physician's assistant. Byers saw Plaintiff's obvious injuries, which included a swollen forehead and blood in his urine, and examined him. Byers documented the injuries, ordered an x-ray and a urine analysis, and gave Plaintiff a Toradol shot.

On April 25, 2010, Plaintiff filed another inmate appeal grieving the denial of medical care on April 20, 2010.

When Plaintiff subsequently received the investigative employee report concerning the RVR against him for threatening staff, he noticed that certain witnesses were not questioned and questions directed to witness S. Ramirez, a correctional officer, were falsified. Plaintiff had a "request for interview" form signed by Ramirez in which Ramirez stated that he did not escort Plaintiff to the building before 11:30 a.m. and that it was after 1:00 p.m. on March 10, 2010, when the escort occurred. When Plaintiff questioned Defendant Carreon several days later about the errors in the

1   report, he said that Defendant James screened the questions and answers and that Plaintiff should

2   speak with James about it.

3          On April 14, 2010, Plaintiff was summoned for the hearing on his RVR.  Plaintiff requested

4   a postponement because the investigative employee report was insufficient.  Defendant James asked

5   how it was insufficient, and Plaintiff produced the form signed by Ramirez which stated that Plaintiff

6   was escorted back to the building after 1:00 p.m., and Plaintiff referenced the questions to and

7   answers by Ramirez in the report.  Defendant James became argumentative, threw the form signed

8   by Ramirez in the trash, and told Plaintiff that he did not see any form signed by Ramirez and that

9   Plaintiff would proceed with the hearing.  Defendant James then found Plaintiff guilty of threatening

10   staff.   Plaintiff was assessed a ninety-day credit forfeiture and the loss of various

11   privileges/programs, and was referred to the institutional classification committee (ICC) for Security

12   Housing Unit (SHU) placement consideration.  The ICC subsequently assessed Plaintiff a five-month

13   SHU term on May 13, 2010.

14          On June 16, 2010, R. Gomez, an appeals coordinator, interviewed Plaintiff regarding his

15   appeal concerning the RVR.  After Officer Ramirez later confirmed that he had signed a request for

16   interview form for Plaintiff and confirmed the timing of Plaintiff's return from court, Plaintiff's

17   inmate appeal was granted and the RVR was dismissed.  Plaintiff's SHU term was vacated by the

18   ICC on July 15, 2010, but by then, Plaintiff had completed the term because he was only required

19   to serve three months and twenty-one days of the assessed term.

20         **B.**    **First Amendment Retaliation Claims**

21          Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition

22   the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

23   1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65

24   F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment

25   retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

26   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

27   the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance

28   ///

1   a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u>

2   <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

3        Plaintiff's allegations that Defendants DeAzevedo, Paz, and Stephens retaliated against him

4   for complaining about them by tossing his cell and confiscated his property, and that Defendant

5   DeAzevedo retaliated against him for filing an inmate appeal regarding the cell search by issuing a

6   false RVR against him for threatening staff give rise to cognizable claims for relief.  However, there

7   is no factual support for a claim against Defendants Paz and Stephens arising out of the issuance of

8   the false RVR.  Defendants Paz and Stephens are not linked to any actions or omissions relating to

9   the issuance of the RVR, and although Plaintiff alleges that they conspired with Defendant

10   DeAzevedo, the allegation is conclusory and there are no specific facts supporting the existence of

11   a conspiracy between the three.  <u>Avalos v. Baca</u>, 596 F.3d 583, 592 (9th Cir. 2010); <u>Franklin v. Fox</u>,

12   312 F.3d 423, 441 (9th Cir. 2001).

13        Regarding the removal of Plaintiff's name tag from the back of his wheelchair, there are

14   again no specific allegations linking this action by Defendants DeAzevedo, Paz, and Jones to a

15   retaliatory motive.  While Defendants DeAzevedo and Paz are linked to prior acts of retaliation,

16   which could support an inference of ongoing retaliation, Defendant Jones has not been linked to

17   retaliatory conduct except by way of a conclusion and Defendant Oder, who is likewise not linked

18   to any retaliation, allegedly told Defendant DeAzevedo to switch Plaintiff's wheelchair.  Under these

19   circumstances, the Court cannot find that this event supports a plausible retaliation claim against

20   Defendants DeAzevedo, Paz, and Jones.

21       **C.**    **Eighth Amendment Claims**

22          **1.**    **Faulty Wheelchair**

23        Plaintiff alleges that Defendants DeAzevedo, Paz, Jones, and Oder replaced his wheelchair

24   with one that had a broken footrest, a torn seat, and other defects, and that by providing him with a

25   hazardous device, they violated his rights under the Eighth Amendment.

26        The Eighth Amendment protects prisoners from inhumane methods of punishment and from

27   inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006).

28   Extreme deprivations are required to make out a conditions of confinement claim, and only those

deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Court finds that allegations of a broken foot rest and a torn seat, which are the only defects specified, are insufficient to support a claim that the wheelchair posed such a serious safety hazard that it violated the Eighth Amendment. Further, Plaintiff's allegations do not support a claim that Defendants DeAzevedo, Paz, Jones, and Oder knowingly disregarded an excessive risk of harm to Plaintiff. Defendant Oder was allegedly responsible for directing the wheelchair replacement and her motive is entirely unknown. The facts that Plaintiff was provided with a faulty wheelchair and that he subsequently tripped over the broken foot pedal are insufficient to support an Eighth Amendment claim, which serves to redress only grave conditions of confinement.

## 2.   Denial of Medical Care

Plaintiff alleges that the failure to provide him with medical care following the incident on April 20, 2010, in which he fell and injured himself trying to get into his wheelchair violated his rights under the Eighth Amendment. A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in

receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff has adequately alleged the existence of injuries sustained in the fall on April 20, 2010. However, Plaintiff was seen the next day and provided with medical care. Because Plaintiff has not alleged that the one-day delay in receiving medical care led to any further injury, Plaintiff fails to state a plausible claim against Defendants DeAzevedo, Paz, Stephens, Jones, James, and Carreon for violation of the Eighth Amendment arising out of their refusal to summon medical attention for him.

**D.    Due Process Claim**

Plaintiff alleges that Defendants Carreon and James violated his right to due process in conjunction with the investigation and adjudication of the RVR.

The Due Process Clause protects against the deprivation of liberty without due process of law.[1] Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). Ordinarily, courts look first to whether or not the inmate has demonstrated the deprivation of a protected liberty interest before inquiring into whether the procedural protections required under federal law were provided. Liberty interests may arise from the Due Process Clause itself or from state law, and the Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005); Hewitt v. Helms, 459 U.S. 460, 466-68, 103 S.Ct. 864 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. However, in some instances, an inmate's "due process rights [may] be violated even if [he] has demonstrated no cognizable liberty interest." Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999).

---

[1] The deprivation of life and/or property is not at issue in this action.

Here, Plaintiff lost yard for ten days and TV and radio privileges for thirty days, and he served a three-month and twenty-three day SHU term.  Plaintiff does not have a protected liberty interest in the loss of yard for ten days or in the loss of TV and radio privileges, and the Court declines to assume the existence of a liberty interest in remaining free from a short-term SHU term in the absence of any allegations supporting the existence of an interest.[2]  Sandin, 515 U.S. at 484. However, Plaintiff was found guilty of a false charge by a hearing officer who either, at worst, knew of its falsity or, at best, did not know of its falsity but nevertheless deprived Plaintiff of a fair hearing by disregarding and destroying his evidence of innocence.  This is sufficient to state a due process claim against Defendant James even in the absence of a protected liberty interest.

Plaintiff's allegations do not support a claim against Defendant Carreon, though.  Defendant Carreon neither issued the RVR nor adjudicated it and to the extent that Plaintiff's right to due process was violated by the adjudication of the RVR, that act was committed by Defendant James.

**E.   State Law Claims**

Plaintiff also alleges violations of sections 51.5, 51.6, 51.7, 52, and 52.1 of the California Civil Code by Defendants DeAzevedo, Paz, Stephens, Jones, James, Carreon, and Oder.[3]  For the following reasons, the Court finds that Plaintiff's claims brought pursuant to sections 51.5, 51.6, 51.7, and 52.1 are not cognizable.

Section 51.5 prohibits, in relevant part, discrimination by business establishments based on sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation.  Cal. Civ. Code § 51.5 (West 2011).  Plaintiff's complaint is devoid of any facts suggesting he was impermissibly discriminated against.  Further, it is questionable whether a prison qualifies as a business establishment and several district courts have concluded it does not.  Wilkins-Jones v. County of Alameda, No. C 08-1485 MHP, 2010 WL 4780291, at *9 (N.D.Cal. 2010) (Unruh Act does not apply to correctional facilities); Anderson v. County of Siskiyou, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D.Cal. 2010) (concluding county jail was not a business

---

[2] Plaintiff's credit forfeiture was presumably reversed by the dismissal of the RVR and is not at issue.

[3] Section 52 provides for a private right of action for damages for violation of sections 51.5, 51.6, and 51.7. Cal. Civ. Code § 52 (West 2011); Munson v. Del Taco, Inc., 46 Cal.4th 661, 667 (2009).

1  establishment and dismissing claim brought pursuant to Cal. Civil Code § 51(b)); Taormina v. Cal,

2  Dep't of Corr., 946 F.Supp. 829, 833-34 (S.D.Cal. 1996) (finding state prison does not qualify as a

3  business establishment under Cal. Civ. Code §§ 51, 51.5).

4          Section 51.6, the "Gender Repeal Act of 1995," prohibits discrimination in pricing based on

5  gender.  Cal. Civ. Code § 51.6 (West 2011).  This section has no applicability to Plaintiff's claims

6  in this action.

7          Section 51.7, known as the Ralph Act, prohibits violence or intimidation by threat of violence

8  against any persons based on sex, race, color, religion, ancestry, national origin, disability, medical

9  condition, marital status, sexual orientation, political affiliation, position in a labor dispute, or

10  because another person perceives them to have one or more of those characteristics.  Cal. Civ. Code

11  § 51.7 (West 2011).  In the absence of any allegations that Plaintiff was subjected to violence or

12  intimidation by threats of violence and that such actions were motivated by discrimination, Plaintiff

13  fails to state a claim.  See Austin B. v. Escondido Union School District, 57 Cal.Rptr.3d 454, 471-72

14  (Cal. Ct. App. 2007) (setting forth elements of Ralph Act claim).

15          Section 52.1, known as the Bane Act, authorizes a claim for relief "against anyone who

16  interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or

17  enjoyment of rights secured by federal or state law."  Jones v. Kmart Corp., 17 Cal.4th 329, 331

18  (1998).  A claim under section 52.1 requires "an attempted or completed act of interference with a

19  legal right, accompanied by coercion."  Id. at 334.  Plaintiff's complaint sets forth no facts

20  supporting the existence of a Bane Act Claim.

21          **F.      Claim for Declaratory Relief**

22          Finally, in addition to damages, Plaintiff seeks declaratory relief, but because his claims for

23  damages necessarily entail a determination whether his rights were violated, his separate request for

24  declaratory relief is subsumed by those claims.  Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th

25  Cir. 2005) (quotation marks omitted).  Therefore, this action properly proceeds as one for damages

26  only.

27  ///

28  ///

1    **III.    Conclusion and Order**

2          Plaintiff's amended complaint states a cognizable retaliation claim against Defendants

3    DeAzevedo, Paz, and Stephens arising out of the search of Plaintiff's cell, a cognizable retaliation

4    claim against Defendant DeAzevedo arising out of the issuance of the false RVR, and a cognizable

5    due process claim against Defendants James arising out of the adjudication of the false RVR.

6    However, Plaintiff's other claims are not cognizable for the reasons set forth in the preceding

7    sections.

8          Plaintiff has not previously been provided with notice of the deficiencies in his claims and

9    therefore, the Court will grant Plaintiff leave to amend to cure those deficiencies which Plaintiff

10   believes, in good faith, are curable.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v.

11   Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature

12   of this suit by adding new, unrelated claims in his second amended complaint.  George v. Smith, 507

13   F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

14         If Plaintiff does not wish to file a second amended complaint and he is agreeable to

15   proceeding only against Defendants DeAzevedo, Paz, Stephens, and James on the claims found to

16   be cognizable, he may file a notice informing the Court that he does not intend to amend and he is

17   willing to proceed only on his cognizable claims.  The other defendants and claims will then be

18   dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that

19   service of process may be initiated on Defendants DeAzevedo, Paz, Stephens, and James.

20         If Plaintiff files a second amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it

21   must state what each named defendant did that led to the deprivation of Plaintiff's constitutional

22   rights, Iqbal, 556 U.S. at __, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual

23   allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly,

24   550 U.S. at 555 (citations omitted).

25         Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114

26   F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be

27   "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

28   Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an

1  amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand,

2  644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

3       Based on the foregoing, it is HEREBY ORDERED that:

4      1.    The Clerk's Office shall send Plaintiff a complaint form;

5      2.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

6          a.    File a second amended complaint curing the deficiencies identified by the

7              Court in this order, or

8          b.    Notify the Court in writing that he does not wish to file a second amended

9              complaint and he is willing to proceed only against Defendants DeAzevedo,

10             Paz, Stephens, and James on the claims found to be cognizable; and

11     3.    If Plaintiff fails to comply with this order, this action will be dismissed, without

12         prejudice, for failure to obey a court order.

16 IT IS SO ORDERED.

17 **Dated:   February 20, 2012**           **/s/ Sheila K. Oberto**

18                            UNITED STATES MAGISTRATE JUDGE

12