# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD, | Case No. 1:11-cv-00101-AWI-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| D. L. DeAZEVEDO, et al., | (Doc. 56) |
| Defendants. | OBJECTION DEADLINE: FIFTEEN DAYS RESPONSE DEADLINE: FIFTEEN DAYS |

**Findings and Recommendations**

**I.     Procedural History**

Plaintiff Timothy Howard ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 20, 2011. This action for damages is proceeding on Plaintiff's amended complaint against Defendants DeAzevedo, Paz, and Stephens for retaliating against Plaintiff by searching his cell and confiscating or destroying his personal property, in violation of the First Amendment; against Defendant DeAzevedo for retaliating against Plaintiff by issuing him a false Rules Violation Report ("RVR"); and against Defendant James for depriving Plaintiff of his right to a fair disciplinary hearing by an impartial decision maker, in violation of the Due Process Clause of the Fourteenth Amendment. (Docs. 9, 11, 14, 28, 33.)

The events giving rise to Plaintiff's federal constitutional claims occurred in March and April 2010 in the E-1 Administrative Segregation Unit ("ASU") at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California.  At the time of the events, Defendants DeAzevedo, Paz, and Stephens were Correctional Officers and Defendant James was a Correctional Lieutenant.

On October 19, 2013, after the close of discovery and in compliance with the scheduling order, Defendants DeAzevedo, Paz, Stephens, and James ("Defendants") filed a motion for summary judgment.  Fed. R. Civ. P. 56(a).  (Docs. 56-57.)   Plaintiff filed an opposition on November 25, 2013, and Defendants filed a reply on December 3, 2013.[1]  (Docs. 62, 66, 68.)  Defendants' motion was submitted upon the record without oral argument, Local Rule 230(*l*), and for the reasons which follow, the Court recommends the motion be denied based on the existence of genuine issues of material fact, *Brodheim v. Cry*, 584 F.3d 1262, 1267 (9th Cir. 2009).

## II. **Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.    Discussion**

    **A.    Defendants' Evidentiary Objections**

As an initial matter, the Court overrules Defendants' hearsay objections to Correctional Officer F. Carreon's statement that Defendant James screened Plaintiff's witness questions and wrote the answers himself and to inmate Blake's statement regarding what he heard. (Doc. 68-1, Evid. Objs. 1, 2.) "At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotations omitted). The focus is on the admissibility of the evidence's contents, not its form, and Officer Carreon and inmate Blake can testify at trial regarding what they saw, heard, or

3

knew.[2] *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

With respect to Defendants' objection that Officer Carreon's statement is not offered in a declaration signed under penalty of perjury, Plaintiff's amended complaint is signed under penalty of perjury and it must be considered as evidence to the extent it is based on Plaintiff's personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *cf. Fonseca*, 374 F.3d at 846 (declarations containing hearsay are admissible for summary judgment purposes if they can be presented in an admissible form at trial). Further, Plaintiff's declaration attesting to Officer Carreon's statement is Exhibit W to Plaintiff's opposition.

With respect to the third objection, in resolving Defendants' motion for summary judgment, it is unnecessary for the Court to consider Plaintiff's assertion that additional declarations he obtained from other inmates were stolen from his cell by Defendant DeAzevedo. Therefore, the Court does not reach Defendants' objection to that evidence. (Evid. Obj. 3.)

**B.     Retaliation Claims Against Defendants DeAzevedo, Paz, and Stephens**

**1.     Cell Search on March 9, 2010**

**a.     Plaintiff's Claim**

In his verified amended complaint, Plaintiff alleges that on March 8, 2010, he and four other inmates held their exercise cages "hostage" by refusing to exit the cages until they were allowed to speak with Lieutenant Childs and Sergeant Plunkett about the abuses of prisoners' rights by Defendants DeAzevedo, Paz, and Stephens, and other staff members.[3] (Doc. 9, Amend. Comp., ¶12.)

On March 9, 2010, during the time Plaintiff was using the ASU exercise yard, Defendants DeAzevedo, Paz, and Stephens retaliated against him for complaining about them by searching his

---

[2] Officer Carreon's statement might also possibly be found to be non-hearsay under Fed. R. Evid. 801(d)(2)(D). The trial judge is in the best position to address that issue, should it arise.

[3] As set forth in section III(A), Plaintiff's amended complaint is verified and the allegations contained therein constitute an opposing affidavit to the extent they are based on personal knowledge of facts admissible in evidence. *Jones*, 393 F.3d at 922-23. The summarization of Plaintiff's claims herein is intended only to frame the claims and should not be taken by the parties as a ruling on admissibility. The parties' evidence is discussed in the sections pertaining to the parties' positions and in the Court's findings.

cell and confiscating his canteen items and legal papers, which left his cell destroyed in the process.  When Plaintiff returned from the exercise yard and saw the condition of his cell, he refused to give up his handcuffs to his escort, Officer Hopkins.  Sergeant Plunkett arrived and told Plaintiff he needed the handcuffs and Plaintiff could write an inmate appeal, which Plunkett would place on the desk of Defendant James.  Plaintiff complied and thereafter drafted an inmate appeal, which Sergeant Plunkett placed on Defendant James' desk, along with the appeals by two other inmates whose cells were also tossed for complaining the previous day.  However, Defendant James did nothing about the appeals.

### b. Parties' Positions

#### 1) Defendant DeAzevedo, Paz, and Stephens' Version of Events

Defendants DeAzevedo, Paz, and Stephens move for summary judgment on the retaliation claim against them on the grounds that they did not search Plaintiff's cell on March 9, 2010, and they were not aware Plaintiff had submitted any complaints against them.

Defendants DeAzevedo and Stephens attest that they were not at SATF on March 8, 2010, when Plaintiff complained to Lieutenant Childs and Sergeant Plunkett; on March 9, 2010, they were not aware of any complaints against them by Plaintiff; and they did not search Plaintiff's cell or remove any property on March 9, 2010.  (Doc. 56-2, Motion, Def. Ex. B, Paz Dec., ¶¶2, 3 & Def. Ex. C, DeAzevedo Dec., ¶¶2-4.)  Defendant Paz attests that on March 9, 2010, he was not aware of any complaints against him by Plaintiff, and he does not recall searching Plaintiff's cell or removing any property from it on March 9, 2010.  (Def. Ex. A, Paz Dec., ¶¶2, 3.)

Defendants argue that Plaintiff's retaliation claim assumes they had knowledge that he complained about them to Lieutenant Childs and Sergeant Plunkett on March 8, 2010, but on March 9, 2010, they were not aware of any complaints.  Furthermore, Defendants deny searching Plaintiff's cell or removing any property on March 9, 2010.

#### 2) Plaintiff's Version of Events

In response, Plaintiff contends that Defendant Paz was present on March 8, 2010, when he and other inmates complained about Paz and other guards to Lieutenant Childs and Sergeant

5

Plunkett; and that on March 9, 2010, Defendants DeAzevedo, Paz, and Stephens searched the cells of Plaintiff and others complaining inmates and destroyed their property, in retaliation for the complaints the previous day.

Plaintiff attests that on March 8, 2010, while on the E-1 ASU exercise yard, he told Defendant Paz he wanted to speak with the ASU lieutenant and sergeant. (Doc. 66, Opp., Pl. Ex. A, Howard Dec., ¶2; Pl. Ex. W, Howard Dec., ¶3.) Defendant Paz questioned Plaintiff regarding why and became argumentative when Plaintiff told Paz he was tired of Paz and DeAzevedo going into his cell and taking his property, harassing him, etc. (Ex. W, Howard Dec., ¶3.) Defendant Paz told Plaintiff his yard was cancelled for asking to speak with the lieutenant and sergeant, and he directed Plaintiff to "re-cuff up." (Ex. A, Howard Dec., ¶¶3, 4; Ex. W, Howard Dec., ¶4.) Defendant Paz then threatened "to kick [Plaintiff's] ass" and to kick him out of his wheelchair. (Ex. A, Howard Dec., ¶5; Ex. W, Howard Dec., ¶4.)

Plaintiff refused to be handcuffed, and other inmates began yelling that Plaintiff was not required to return to his cell for asking to speak with ASU supervisors. (Ex. A, Howard Dec., ¶¶5, 6; Ex. W, Howard Dec., ¶4.) Defendant Paz and other officers began "using disrespectful terms." (Ex. A, Howard Dec., ¶7.)

Ultimately, Plaintiff and inmates Nava, McCoy, Jimenez, and Covington spoke with Lieutenant Childs and Sergeant Plunkett about the abusive conduct of Defendants DeAzevedo, Paz, Stephens, and James, among other staff. (Amend. Comp., ¶¶13, 14; Ex. A, Howard Dec., ¶9; Ex. W, Howard Dec., ¶6.) With respect to Defendant James, who was a lieutenant, Plaintiff complained that he did nothing and was part of the problem. (Ex. W, Howard Dec., ¶6.)

On March 9, 2010, when Plaintiff returned to his cell from the exercise yard, he saw that his canteen items, legal papers, and pictures had been confiscated and his cell was basically destroyed. (Amend. Comp., ¶16; Ex. A, Howard Dec., ¶10; Ex. W, Howard Dec., ¶¶7, 8.) Plaintiff also heard inmates Nava and Jimenez return to their cell and begin arguing about the destruction of their property. (Ex. A, Howard Dec., ¶11; Ex. W, Howard Dec., ¶10.) The search of Plaintiff's cell was witnessed by inmate Blake, who saw Defendants DeAzevedo, Paz, and Stephens enter the cell; Paz and Stephens kicking inmates' property down the tier; and Defendant

DeAzevedo standing outside the window as they searched Plaintiff's cell. (Amend. Comp., ¶16; Ex. A, Howard Dec., ¶10; Ex. E, Blake Dec.; Ex. W, Howard Dec., ¶8.) In addition, Plaintiff heard inmate Blake tell Sergeant Plunkett that Defendants DeAzevedo, Paz, and Stephens were responsible and that they had attempted to get him to exit his cell so they could take inmate McCoy's property. (Ex. A, Howard Dec., ¶12.) Inmate Covington also stated that they tried to get him to cuff up but he called them punks and told them to "get the hell away from [his] door." (*Id.*)

As a result of the cell searches and at the direction of Sergeant Plunkett, Plaintiff and inmates Nava and Jimenez wrote inmate appeals, which Plunkett said he would put on Defendant James' desk. (Ex. A, Howard Dec., ¶11; Ex. W, Howard Dec., ¶10.)

### c. Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim*, 584 F.3d at 1269.

### d. Findings

There is no question that Plaintiff's right to complain to Lieutenant Childs and Sergeant Plunkett about staff was protected conduct or that the cell search and confiscation or destruction of his property constituted adverse action. *Watison*, 668 F.3d at 1114-15; *Brodheim*, 584 F.3d at 1269. However, Plaintiff must show that his verbal complaint on March 8, 2010, was the substantial or motivating factor behind the cell search and property destruction which occurred on March 9, 2010. *Brodheim*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Soranno's Gasco, Inc. v.*

7

*Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). In this Circuit Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendants' motivation. *Brodheim*, 584 F.3d at 1271 (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendants for the adverse action were false and pretextual. *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citing *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

Here, Plaintiff submitted evidence that he and inmates Nava, McCoy, Jimenez, and Covington complained about Defendants DeAzevedo, Paz, and Stephens on March 8, 2010. Although Defendants DeAzevedo and Stephens were not at work that day, and Defendants deny knowledge of Plaintiff's complaints against them, Plaintiff's evidence, which must be taken as true, *Thomas*, 611 F.3d at 1149, shows that Defendant Paz knew Plaintiff wanted to complain to supervisors about Paz, DeAzevedo, and other officers; and Paz expressed opposition to Plaintiff's request to speak with supervisory personnel.

The very next day, the cells of Plaintiff and the other four complaining inmates were targeted.[4] In addition to Plaintiff's cell, inmates Nava and Jimenez's cells were searched and their property was confiscated or destroyed. Attempts were also made to access inmates McCoy and Covington's cells, but the searches were thwarted by inmate Blake's presence and inmate Covington's refusal to cuff up.[5] Although Defendants deny any involvement, Plaintiff has

---

[4] Defendants do not argue that the cell search reasonably advanced a legitimate correctional goal and no evidence was presented that the cell search was routine or otherwise authorized. Plaintiff testified that when a cell is normally searched, it is left in a "respectful manner," property is confiscated or destroyed only if it is excessive or is contraband, and a cell search slip is left behind. (Howard Depo., 25:10-19.) Furthermore, Defendants submitted evidence denying that Plaintiff's cell was searched on March 9, 2010. (Def. Ex. C, DeAzevedo Dec., ¶6.)

[5] Inmate Blake was inmate McCoy's cellmate. (Ex. A, Howard Dec., ¶12.)

8

evidence that Defendants were present and were involved in the cell searches.[6] Defendant Paz's knowledge of and displeasure with Plaintiff's complaint to supervisors on March 8, 2010; the searches, or attempted searches, of the cells of the five inmates who complained on March 9, 2010; the involvement of all three defendants in the cell searches on March 9, 2010; and the close proximity between the complaint and the cell searches suffice to raise a triable issue of fact regarding whether Defendants searched Plaintiff's cell and destroyed his property on March 9, 2010, to retaliate against him for complaining about officer misconduct the previous day.

Defendants also argue that Plaintiff's pursuit of his verbal complaint and subsequent inmate appeal demonstrates his rights were not actually chilled. However, Plaintiff is a pro se litigant and Defendants made this argument for the first time in their reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Furthermore, Defendants' argument mischaracterizes the chilling element: the focus is on whether the adverse action would chill or silence a person of ordinary firmness, not whether Plaintiff was *actually* chilled. *Brodheim*, 584 F.3d at 1271.

### 2. False Rules Violation Report for Threat on March 10, 2010

#### a. Plaintiff's Claim

Next, Plaintiff alleges in his amended complaint that on March 9, 2010, Sergeant Plunkett placed his appeal and inmates Nava and Jimenez's appeals of the cell searches on Defendant James' desk. On March 10, 2010, Plaintiff was taken to Kings County Superior Court in Hanford for a court appearance. When he returned, his appeal from March 9, 2010, was on his bed, with a response to it from Defendant DeAzevedo.

On March 17, 2010, Plaintiff received an RVR for threatening staff. Defendant DeAzevedo issued the RVR, and it stated that on March 10, 2010, at 11:30 a.m., Plaintiff said he was going to get Defendants Paz and Stephens for searching his cell and taking his property.

---

[6] Defendants' argument in their reply that inmate Blake's declaration lacks credibility is noted, but the Court may not assess credibility or weigh evidence in resolving a motion for summary judgment. *E.g.*, *Alameda Books Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042-43 (9th Cir. 2011); *Soremekun*, 509 F.3d at 984; *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005). As far as the Court can discern from the record, inmate Blake signed the declaration, under penalty of perjury. That it appears Plaintiff prepared the declaration for his signature is no more material than counsel's involvement in preparing Defendants' declarations for their signatures.

Plaintiff submitted another inmate appeal on March 17, 2010, stating that the RVR was false and retaliatory, and he was in Hanford on March 10, 2010. Plaintiff alleges the appeal was ripped into pieces by Defendant DeAzevedo.

### b.    Parties' Positions

#### 1)    Defendant DeAzevedo's Version of Events

In moving for summary judgment on the false RVR claim, Defendant DeAzevedo argues only that there is no evidence he knew of Plaintiff's complaints against him, thereby reducing Plaintiff's claim to one of authoring a false report, which is not a constitutional violation.[7]

With respect to the issuance of the RVR, Defendant DeAzevedo attests that he reviewed, investigated, and responded to Plaintiff's March 9, 2010, inmate appeal regarding the cell searches that occurred earlier in the day. (DeAzevedo Dec., ¶¶3, 5.) Defendant spoke with staff on duty, reviewed cell search logs, and spoke with inmates with a clear view of Plaintiff's cell. (*Id.*, ¶5.) Defendant found no evidence that Defendant Paz entered Plaintiff's cell or that Plaintiff's cell was searched on March 9, 2010, and he returned the appeal to Plaintiff on March 10, 2010. (*Id.*)

Defendant attests that he spoke with Plaintiff about the appeal on March 10, 2010, and informed Plaintiff no one had searched his cell. (*Id.*, ¶6.) Plaintiff responded in turn that he was going to "get" Defendants Paz and Stephens. (*Id.*) Defendant asked what Stephens had done to Plaintiff and Plaintiff said, "He's fucking with my paperwork." (*Id.*) Defendant then asked Plaintiff what he meant by "get" Paz and Stephens and Plaintiff said, "You know what that means, DeAzevedo." (*Id.*) Defendant attests that at that time, he was aware Plaintiff had been accused of attempted murder of a peace officer at another prison and he interpreted the statement as a threat.[8] (*Id.*, ¶¶6, 7.)

---

[7] Defendants cite to *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984) (protection against arbitrary actions such as planting evidence and falsifying a rules violation report is found in the procedural due process requirements for prison disciplinary hearings) and *Freeman v. Rideout*, 808 F.2d 949 (2d. Cir. 1986) (filing of false charges is not a *per se* constitutional violation; the constitutional right at issue is the deprivation of a protected right without the procedural protections due).

[8] There is no dispute that Plaintiff was charged with attempted murder of a correctional officer and found guilty. (Howard Depo., 9:9-12 & 34:3-9.)

10

1 Defendant thereafter drafted the RVR against Plaintiff based on his concern for the safety
2 of Defendants Paz and Stephens, and he submitted it to his supervisor, but he did not proof read or
3 sign the final copy of the RVR. (*Id.*, ¶8.)

### 2) Plaintiff's Version of Events

5 In response, Plaintiff contends that the RVR charge was false and the RVR was issued in
6 retaliation against him for filing appeals. Plaintiff attests that Defendant DeAzevedo reported he
7 threatened staff at 11:30 a.m. on March 10, 2010, but he did not return to the prison from court in
8 Hanford until after 12:00 p.m.[9, 10] (Amend. Comp., ¶21.)

9 Furthermore, Plaintiff testified during his deposition that he did not see Defendant
10 DeAzevedo upon his return to his unit from court and it was Defendant Paz who said to him, "You
11 threatening to get me? You going to try to get me for taking your property?" (Doc. 74, Howard
12 Depo., 35:19-36:1.) Plaintiff responded, "What the hell you talking about?" and Defendant Paz
13 said, "I heard you told somebody you was going to get me this morning." (*Id.*, 36:2-3.) Plaintiff
14 then said, "I just got back from court, I ain't even been here this morning." (*Id.*, 36:4-5.) Plaintiff
15 testified that is how he found out about his alleged threat to get Paz and Stephens; and although he
16 testified he does not recall if he saw Defendant DeAzevedo on March 10, 2010, he knew
17 DeAzevedo had been there because his inmate appeal was laying on his bed with DeAzevedo's
18 response. (*Id.*, 36:5-13.)

### c. Findings

20 As previously set forth, Plaintiff has a First Amendment right to complain about officers'
21 conduct, and the issuance of a false RVR against an inmate constitutes adverse action. *Watison*,
22 668 F.3d at 1114-15; *Brodheim*, 584 F.3d at 1269. At issue is whether Plaintiff's verbal and/or
23 written grievances against staff were the substantial or motivating factor behind the issuance of the
24 RVR. *Brodheim*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted).

---

[9] Although Defendants argue in their reply that Plaintiff does not directly deny making a threat, Plaintiff's deposition testimony contradicts that argument. (*E.g.*, Howard Depo., 38:7-23.)

[10] In his amended complaint, Plaintiff alleges he was transported back to his unit after 1:00 p.m. (Amend. Comp., ¶40.) Plaintiff subsequently explained that the clock in the unit was off by an hour on March 10, 2010, and he returned after 12:00 p.m., not 1:00 p.m. (Howard Depo., 40:1-18; Pl. Ex. W, Howard Dec., ¶13.)

11

Defendant DeAzevedo hinges his argument on lack of knowledge of Plaintiff's complaints, which eviscerates Plaintiff's claim for relief given that mere issuance of a false rules violation report is not itself a *per se* constitutional violation. However, Defendant DeAzevedo was clearly aware that Plaintiff submitted an inmate appeal on March 9, 2010, because Defendant was assigned to respond to it and he did.

With respect to the verbal complaint on March 8, 2010, Plaintiff's evidence shows that he complained about Defendants Paz and DeAzevedo, along with other staff members, and that Paz knew about that complaint and was opposed to it. The retaliatory cell search by Defendants DeAzevedo, Paz, and Stephens occurred one day after that verbal complaint; and the allegedly trumped up threat that gave rise to the false RVR occurred two days after the verbal complaint and one day after the cell search.

Furthermore, the threat purportedly occurred at a time when Plaintiff was not at the prison, Plaintiff denies having any such conversation with Defendant DeAzevedo, and Plaintiff contends he learned of his purported threat from Defendant Paz. In this Circuit, that evidence suffices to raise a triable issue of fact regarding whether Defendant DeAzevedo was motivated to issue a false RVR against Plaintiff because of Plaintiff's complaints against staff. *McCollum*, 647 F.3d at 882.

**C.    Due Process Claim Against Defendant James**

**1.    Plaintiff's Claim**

Finally, Plaintiff alleges in his amended complaint that on April 14, 2010, he was summoned for the hearing on the false RVR. Plaintiff requested a postponement because the investigative employee report was insufficient. Defendant James asked how it was insufficient, and Plaintiff produced a document signed by Officer Ramirez which stated that Plaintiff was escorted back to the building after 12:00 p.m., and Plaintiff referenced the questions to and answers by Ramirez in the report. Defendant James became argumentative; threw the form signed by Ramirez in the trash; and told Plaintiff that he did not see any form signed by Ramirez and Plaintiff would proceed with the hearing. Defendant James then found Plaintiff guilty of threatening staff. Plaintiff was assessed a ninety-day credit forfeiture and the loss of various privileges/programs, and was referred to the institutional classification committee (ICC) for

12

Security Housing Unit ("SHU") placement consideration.[11]  The ICC subsequently assessed Plaintiff a SHU term on May 13, 2010.

### 2. Parties' Positions

#### a. Defendant James' Version of Events

Defendant James argues that he is entitled to summary judgment on the due process claim against him because Plaintiff was provided with the procedural protections he was due, *Wolff v. McDonnell*, 418 U.S. 539, 563-71, 94 S.Ct. 2963 (1974), and Defendant's decision was supported by "some evidence," *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985);

On March 10, 2010, at approximately 11:30 a.m., Plaintiff told Defendant DeAzevedo he was going to "get" Defendants Paz and Stephens, and DeAzevedo subsequently issued him an RVR for threatening staff. (DeAzevedo Dec., ¶¶6, 8; James Dec., Ex. 4.) Defendant James, a correctional lieutenant, was the assigned as the senior hearing officer responsible for conducting Plaintiff's disciplinary hearing. (James Dec., ¶2.) The hearing was scheduled for April 14, 2010, at 10:30 a.m. in the ASU Lieutenant's Office. (*Id.*, ¶3.) On March 17, 2010, Plaintiff was provided with a copy of the RVR, and he was provided with the opportunity to request that prison employees be present at the hearing and that documents or evidence be produced at the hearing. (*Id.*, ¶4.) Plaintiff requested that inmate witnesses Covington, Johnson, McCoy, Blake, Jimenez, and Quinonez be present at the hearing to testify, but he did not request any staff witnesses or the production of evidence. (*Id.*, ¶4 & Ex. 1.)

Officer Carreon was assigned as the investigative employee and he gathered information and prepared an investigative report. (*Id.*, ¶5.) The investigative report was reviewed by Defendant James in preparation for the disciplinary hearing, and the report contained statements from Defendants DeAzevedo, Paz, and Stephens; Officers Ochoa, Osbourn, Emmerson, Mendoza, Ramirez, and Esparza; and inmates McCoy, Blake, Covington, Johnson, and Nava, but Plaintiff did not provide a statement. (*Id.*, ¶5.)

---

[11] No argument was made that Plaintiff's due process claim is barred by a credit loss, presumably because when the RVR was subsequently dismissed in the interest of justice, as discussed in section III(C)(1)(b), Plaintiff's credits were restored. *Wilkinson v. Dotson*, 544 U.S. 74, 81-2, 125 S.Ct. 1242, 1248 (2005).

13

Plaintiff then refused to attend the disciplinary hearing on April 14, 2010, because he claimed the investigative report was insufficient and incomplete. (*Id.*, ¶6 & Ex. 1.) Plaintiff was advised that if he did not appear, a "not guilty" plea would be entered on his behalf. (*Id.*, ¶6 & Ex. 3.) Plaintiff signed the chrono documenting his refusal to attend, and he was subsequently found guilty based on Defendant DeAzevedo's statement. (*Id.*, ¶6 & Ex. 4.) Given Plaintiff's refusal to attend the hearing, inmates Covington, Johnson, McCoy, Blake, Jimenez, and Quinonez were not called to testify. (*Id.*, ¶6.)

Defendant James argues that Plaintiff was provided with the opportunity to provide exculpatory evidence before and during the hearing, but he failed to provide his own statement and he failed to attend the hearing. Defendant further argues that Defendant DeAzevedo's statement about Plaintiff's threat constitutes "some evidence," and he properly relied on the statement in the absence of any testimony from Plaintiff or Officer Ramirez, whom Plaintiff did not request as a witness at the hearing. With respect to the thirty-minute time discrepancy between the threat and Plaintiff's return to the unit, Defendant James points out that Defendant DeAzevedo wrote "*approximately* 11:30 a.m.," and DeAzevedo did not proof read or sign the final copy, which might have given him the opportunity to clarify the precise time the statement was made. (DeAzevedo Dec., ¶8; James Dec., Ex. 4.)

### b. Plaintiff's Version of Events

On March 10, 2010, Plaintiff was transported to Kings County Superior Court in Hanford for court proceedings, and he was not transported from the prison's Receiving and Reception ("R&R") area to the ASU by Officer Ramirez and another officer until after 12:00 p.m. (Amend. Comp., ¶¶20, 40; Howard Depo., 33:21-25, 35:1-11, 38:24-6; Pl. Ex. W, Howard Dec., ¶12.) Plaintiff later learned from Defendant Paz that he had allegedly threatened Paz and Defendant Stephens. (Howard Depo., 35:24-36:8; Pl. Ex. W, Howard Dec., ¶13.) Plaintiff told Defendant Paz he was not even there that morning and during the course of his discussion with Paz, Officer Ramirez was called over to confirm that he brought Plaintiff back after 12:00 p.m. (Howard Depo., 38:7-39:1; Pl. Ex. W, Howard Dec., ¶13.)

14

On March 17, 2010, Plaintiff received the RVR written by Defendant DeAzevedo charging him with threatening staff, based on a threat to get Defendants Paz and Stephens made to DeAzevedo on March 10, 2010, at 11:30 a.m. (Amend. Comp., ¶21; Pl. Ex. W, Howard Dec., ¶16.) Officer Carreon was assigned as the investigative employee, and when Plaintiff reviewed the investigative report, he saw that Sergeant Plunkett, Sergeant Orick, Lieutenant Childs, and inmate Jimenez were not questioned, and statements attributed to F. R. Monroe were inaccurate. (Amend. Comp., ¶¶40, 41; Howard Depo., 37:6-15; Pl. Ex. W, Howard Dec., ¶¶16, 17, 20.) In addition, the report documented that Officer Ramirez did not remember what time he brought Plaintiff back from court, which Plaintiff contends was a falsification given that Officer Ramirez previously provided Plaintiff with written documentation stating he brought Plaintiff back after 12:00 p.m. (Amend. Comp., ¶40; Howard Depo., 42:8-43:8 Pl. Ex. W, Howard Dec., ¶20.)

When Plaintiff questioned Officer Carreon about the investigative report, Carreon told him that Defendant James screened the questions and answers, and documented the answers. (Amend. Comp., ¶41; Howard Depo., 44:19-21; Pl. Ex. W, Howard Dec., ¶21.)

Plaintiff's hearing was scheduled for April 14, 2010, and it was held in a law library holding cage. (Amend. Comp., ¶42; Howard Depo., 45:14-20; Pl. Ex. W, Howard Dec., ¶22.) Defendant James approached the cage and Plaintiff told him the hearing needed to be postponed for several reasons. (Amend. Comp., ¶42; Howard Depo., 45:22-24 & 46:12-13; Pl. Ex. S, Howard Dec., ¶¶3, 5; Pl. Ex. W, Howard Dec., ¶22.) Plaintiff stated that Defendant James should not be the hearing officer because on March 11, 2010, he pulled Plaintiff into his office and told Plaintiff he was going to find Plaintiff guilty of threatening his officer, demonstrating his bias; and Plaintiff stated to James that Plaintiff had previously submitted several requests to the chief disciplinary office regarding the propriety of James holding the hearing. (Amend. Comp., ¶42; Howard Depo., 46:3-8; Pl. Ex. W, Howard Dec., ¶14.) Plaintiff also told Defendant James that the investigative report was insufficient, some witnesses were not questioned, and the investigative report contained false statements attributed to Officer Ramirez. (Amend. Comp., ¶42; Howard Depo., 46:13-19; Pl. Ex. S., Howard Dec., ¶3; Pl. Ex. W, Howard Dec., ¶22.)

15

Plaintiff told Defendant James he had a document from Officer Ramirez stating what time Ramirez brought him back, and James asked to see it. (Amend. Comp., ¶42; Howard Depo., 46:19-22; Pl. Ex. W, Howard Dec., ¶22.) An officer retrieved the document from Plaintiff's cell and Plaintiff showed it to Defendant James, who then took the request, threw it in the trash, and said, "I don't see nothing."[12] (Amend. Comp., ¶42; Howard Depo., 46:21-74:5; Pl. Ex. W, Howard Dec., ¶22.) Defendant James was also provided with a copy of the court's minute order for March 10, 2010, and he threw that away. (Pl. Ex. W, Howard Dec., ¶22.) Defendant James told Plaintiff, "You're going to proceed with the report you got or you're going to refuse to attend the hearing. Just that simple." (Amend. Comp., ¶42; Howard Depo., 47:5-7; Pl. Ex. W, Howard Dec., ¶22.)

Plaintiff told Defendant James he had a right to a fair hearing and he knew James was not fair because he worked with the officers. (Howard Depo., 47:8-11.) Plaintiff also said Defendant James was aware of the incident because he was there on March 10, 2010; the incident was reported to him; and he was not supposed to conduct the hearing. (Howard Depo., 47:11-13.) Plaintiff then said for the sake of argument, he would request to postpone the hearing until he got an accurate investigative report. (Howard Depo., 47:14-16.) Plaintiff also asked for a new investigative employee and for a hearing officer other than Defendant James. (Howard Depo., 47:16-17.) Defendant James told Plaintiff he could sign a request refusing to attend the hearing and James would find him guilty in absentia. (Howard Depo., 47:17-19.)

Plaintiff signed the 128-B chrono documenting his refusal to attend his hearing, but he wrote, "Insufficient IE report & decision predetermined without complete documentation" above the signature "P.O.W" or prisoner of war. (Howard Depo., 31:10-20 & 47:19-49:13; Pl. Ex. P.)

Plaintiff was found guilty and assessed a ninety-day credit forfeiture and the loss of television, radio, yard, and canteen; and he was referred to the ICC, which assessed him a SHU term. (Amend. Comp., ¶43; Howard Depo., 50:2-6, 12.) Plaintiff appealed the finding of guilt and the RVR was dismissed in the interest of justice. (Amend. Comp., ¶¶43, 45; Pl. Ex. H, pp. 88-

---

[12] Plaintiff later obtained another statement from Officer Ramirez. (Pl. Ex. H, p. 105.)

16

90; Pl. Ex. W, Howard Dec., ¶23.) The ICC then set aside Plaintiff's SHU term. (Amend. Comp., ¶46; Pl. Ex. W, Howard Dec., ¶26.)

### 3. Legal Standard

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wolff*, 418 U.S. at 556. Ordinarily, courts look first to whether or not the inmate has demonstrated the deprivation of a protected liberty interest before inquiring into whether the procedural protections required under federal law were provided. Liberty interests may arise from the Due Process Clause itself or from state law, and the Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68, 103 S.Ct. 864 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

However, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff*, 418 U.S. at 558, and in some instances, as in this case, an inmate's "due process rights [may] be violated even if [he] has demonstrated no cognizable liberty interest,"[13] *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999); *accord Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003); *Nonnette v. Small*, 316 F.3d 872, 878-79 (9th Cir. 2002). "[L]ack of [a] fair hearing violates due process, wholly apart from the conditions of confinement and without regard to the *Sandin* requirements," *Nonnette*, 316 F.3d at 878-79, and in the context of prison disciplinary proceedings, the Ninth Circuit has recognized "a sheer denial of due process claim," *Jackson*, 353 F.3d at 757, in instances in which there was no evidence to support the adverse disciplinary hearing finding, *Nonnette*, 316 F.3d at 878-79 (administrative segregation term imposed in the absence of any evidence of guilt); *Burnsworth*, 179 F.3d at 774 (inmate

---

[13] The Court did not find that Plaintiff was deprived of a protected liberty interest. (Docs. 11, 28.)

17

reclassified as escape and security risk and transferred to maximum security prison after being convicted of escape despite no evidence he attempted to escape).

With respect to the process due, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Prisoners are entitled to the following five procedural protections: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 563-71.

In addition, "some evidence" must support the decision of the hearing officer. *Hill*, 472 U.S. at 455; *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013). "[The] test is 'minimally stringent,'" *Castro*, 712 F.3d at 1314 (quoting *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994)), and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion, *id.* (quoting *Bruce*, 351 F.3d at 1287). "Evidence only must bear 'some indicia of reliability' to be considered 'some evidence,'" *id.* (quoting *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990)), and "evidence may qualify as 'some evidence,' even if it does not 'logically preclude any conclusion but the one reached,'" *id.* (quoting *Hill*, 472 U.S. at 457).

Finally, embodied in the protection of the individual against arbitrary action of government, *Wolff*, 418 U.S. at 558 (quotation marks omitted), is the requirement that the decision maker be impartial, *Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584 (1997); *Wolff*, 418 U.S. at 570-71. "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Edwards*, 520 U.S. at 647.

///

### 4. **Findings**

While Defendant James argues that Plaintiff was provided with the minimal procedural protections he was due under *Wolff* and his conviction was supported by "some evidence" in the form of Defendant DeAzevedo's statement, the crux of Plaintiff's due process claim is the denial of a fair hearing by an impartial decision maker. Plaintiff contends that Defendant James was biased against him, and James both destroyed exculpatory evidence and falsified evidence, including Officer Ramirez's answers. *Balisok*, 520 U.S. at 647.

Defendant DeAzevedo's statement alone could certainly constitute "some evidence" sufficient to support an adverse finding by an impartial decision maker. *See Castro*, 712 F.3d at 1314-15 (Courts "do not examine the entire record, independently assess witness credibility, or reweigh the evidence.") However, Defendant James' impartiality is at issue and there are material factual disputes between the parties which preclude Defendant from entitlement to summary judgment on Plaintiff's due process claim.

Assuming the truth of Plaintiff's version of events, *Thomas*, 611 F.3d at 1149, when Plaintiff received Officer Carreon's investigatory report, he noticed that some witnesses were not questioned and Officer Ramirez's statement was falsified. In particular, Officer Ramirez purportedly responded he did not recall escorting Plaintiff back from R&R on March 10, 2010, despite having previously provided Plaintiff with written confirmation that he escorted Plaintiff from R&R to the unit after 12:00 p.m. When Plaintiff subsequently questioned Officer Carreon, he was informed that he should talk to Defendant James because James scripted the questions and answers.

On the date of the hearing, Plaintiff did not refuse to appear, as Defendant contends. Rather, the hearing was held in a cage and Plaintiff requested a postponement based on an insufficient investigatory report. When Defendant James questioned Plaintiff about the insufficiencies, Plaintiff produced the document in which Officer Ramirez stated he escorted Plaintiff from R&R after 12:00 p.m., and he pointed out the contradictory statements documented in the investigatory report. Defendant James became argumentative, and he threw Plaintiff's evidence from Officer Ramirez in the trash, along with the minute order documenting Plaintiff had

court on March 10, 2010. Defendant then informed Plaintiff, "You'll proceed," said he "did not see" any statement from Officer Ramirez, and informed Plaintiff he was going to be found guilty.

There is no question that if the events unfolded as Plaintiff alleges, he was deprived of a fair hearing by an impartial decision maker. *Balisok*, 520 U.S. at 647. Given the existence of material factual disputes between the parties regarding the fairness of Plaintiff's hearing as related to the conduct of Defendant James, the Court recommends Defendant's motion for summary judgment on Plaintiff's due process claim be denied.

## IV.     Recommendation

Accordingly, for the reasons set forth herein, the Court RECOMMENDS that Defendants' motion for summary judgment, filed on October 18, 2013, be DENIED and this matter be set for jury trial.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within **fifteen (15) days** from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **July 11, 2014**                                   /s/ Sheila K. Oberto
                                                                   UNITED STATES MAGISTRATE JUDGE